## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SDHARI MORRIS<br>248 Thunderbird Terrace<br>Stroudsburg, PA 18360<br><br>       Plaintiff,<br>  v.<br><br>AEROTEK PROFESSIONAL<br>SERVICES, INC.<br>1301 Parkway Dr.<br>Hanover, MD 21076<br>    and<br>ALLEGIS GROUP, INC.<br>1301 Parkway Dr.<br>Hanover, MD 21076<br>    and<br>MAXIMUS FEDERAL SERVICES, INC.<br>575 Keystone Ave.<br>Pittston, PA 8640<br><br>       Defendants. | CIVIL ACTION<br><br>DOCKET NO.: 18-576<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CIVIL ACTION COMPLAINT

Sdhari Morris (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against Aerotek Professional Services, Inc., Allegis Group, Inc., and Maximus Federal Services, Inc. (*hereinafter* collectively referred to as "Defendants," unless indicated otherwise) for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*) and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff asserts, *inter alia*, that she was unlawfully terminated from Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of civil rights under the FMLA and the ADA.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing a lawsuit within 90 days of receiving a right-to-sue letter from the EEOC. Plaintiff also exhausted her administrative remedies with respect to her PHRA claims because she timely filed a charge with the PHRC and the charge has remained pending with the PHRC for at least one year.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Aerotek Professional Services, Inc. ("Defendant Aerotek") and Defendant Allegis Group, Inc. ("Defendant Allegis") are both recruiting/staffing agencies. Upon information and belief, Defendant Aerotek is the operating company for Defendant Allegis and both are located at the above captioned address.[1]

9. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants Aerotek and Allegis are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

10. Defendant Maximus Federal Services, Inc. ("Defendant Maximus") is a corporation with a location at the above-captioned address that provides Medicare managed care appeals and other health plan information.

11. Plaintiff was hired by Defendant Agency to work within Defendant Maximus as a temporary to permanent employee. While Plaintiff was not paid by Defendant Maximus, she was still treated in all functional aspects like an employee of Defendant Maximus. Plaintiff was managed by all Defendants and all Defendants had control over the terms and conditions of her employment, including but not limited to termination. Therefore, all Defendants may be considered single and/or joint employers of Plaintiff for purposes of the instant action.

---

[1] Defendant Aerotek and Defendant Allegis are hereinafter collectively referred to as "Defendant Agency," unless indicated otherwise.

12. At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## **FACTUAL BACKGROUND**

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. On or about February 13, 2017, Plaintiff was placed by Defendant Agency to work with Defendant Maximus' Pittson, PA facility as a General Clerk II (a temporary to permanent position).

15. During her employment with Defendants, Plaintiff was a dedicated and hard-working employee who performed her job well.

16. Plaintiff has and continues to suffer from a life-term disability known as Myaethenia Gravis, which (at times) affects her muscle movement and vision.

17. Despite her aforesaid disability and resulting side effects, Plaintiff was still able to perform the duties of her job well with Defendants; however, she did require reasonable accommodations at times (discussed further *infra*).

18. On or about May 31, 2017, Plaintiff was admitted to the hospital for reasons related to her aforesaid disability and therefore requested a brief medical leave of absence until June 21, 2017 (a reasonable accommodation under the ADA).

19. On or about June 1, 2017, Plaintiff was contacted by Defendant Agency's management, one Jordan Liguori (Recruiter at Defendant Agency), stating that if Plaintiff did not contact her by June 2, 2017 that she [Plaintiff] would be terminated.

20. Due to the fact that Plaintiff's heath conditions affects her muscle movement, it was difficult for Plaintiff to speak during the time period that she was hospitalized (discussed *supra*); however, Plaintiff had already contacted Defendants through e-mail and her sister had also called Defendants to let them know about Plaintiff's health conditions and the fact that she would need a brief medical leave of absence.

21. Despite the fact that Plaintiff had trouble speaking during her aforesaid hospitalization, she contacted Liguori as instructed on or about June 2, 2017.

22. During her June 2, 2017 telephone conversation with Liguori, Plaintiff was informed that she was terminated.

23. The reason given by Liguori for Plaintiff's my termination was "attendance."

24. Plaintiff was also informed by Liguori on June 2, 2017 that Defendant Agency was acting at the direction of Defendant Maximus.

25. On or about June 15, 2017, shortly after she was terminated from Defendants (discussed *supra*), Plaintiff was contacted by Liguori again and told that even though she was terminated on June 2, 2017, she could return to her position or she could resign.

26. In response to her June 15, 2017 telephone conversation with Liguori, Plaintiff elected to return to her position with Defendants, but informed Liguori that she would still need to be out of work until June 21, 2017 because of her aforesaid disability, as Plaintiff's physician still needed to medically clear her to return to work.

27. During Plaintiff's aforesaid June 15, 2017 telephone call with Liguori, Liguori also requested that Plaintiff fill out ADA accommodation paper work for any accommodations that she may need as a result of her disability.

28. Therefore, on or about June 21, 2017, Plaintiff filled out and submitted ADA

accommodation paperwork to Tiffany Duda (Defendant Agency's Account Recruiting Manager).

29. Plaintiff requested the following reasonable medical accommodations from Defendants:

    i. The ability to take brief breaks to sit in a dark room for a few minutes;

    ii. A screen protector for her computer; and

    iii. A chair with neck support.

30. On or about June 22, 2017, Plaintiff returned to work for Defendants.

31. On or about June 27, 2017, Plaintiff complained to Defendants' ethics hotline that she believed she had been subjected to disability discrimination by Defendants.

32. The very same day that Plaintiff complained of disability discrimination (June 27, 2017), she receive a written warning from Duda citing "attendance" as the reason for said disciplinary action.

33. On or about June 29, 2017 - only 8 days after returning to work from her first wrongful termination and only two (2) days following her complaint of disability discrimination - Plaintiff was informed by Ashley Slodysko (On Site Manager for Defendant Agency) that she was being terminated yet again.

34. Plaintiff was also informed by Slodysko that her June 29, 2017 termination was again directed by Defendant Maximus.

35. On or about June 30, 2017, one day after being unlawfully terminated for the second time, Plaintiff was called by Stacy Gomes (Defendant Agency's Employee Relations Manager of the Northeast and Mid-Atlantic Regions) and separately by Duda. Both individuals asked Plaintiff to return to work on July 3, 2017.[2]

---

[2] Gomes also informed Plaintiff that she would be paid for June 29th and 30th.

36. Plaintiff returned to work for Defendants on or about July 3, 2017 (after her second discriminatory/retaliatory termination).

37. On or about July 7, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting claims against all Defendants for disability discrimination, retaliation, and failure to accommodate under the ADA.

38. Following her return to work on or about July 3, 2017, Plaintiff was not provided with necessary accommodations as she had previously requested (discussed *supra*), which caused her aforesaid health conditions to become exacerbated.

39. Therefore, on or about July 13, 2017, Plaintiff's attorney sent all Defendants a letter requesting that they promptly accommodate her disabilities and attached a copy of Plaintiff's July 7, 2017 EEOC Charge of Discrimination:

> This firm has been retained to represent Sdhari Morris ("Ms. Morris") in the above referenced matter. Enclosed, you will find a copy of the EEOC charge which was filed on Ms. Morris' behalf earlier last week.
>
> It is my understanding that the accommodations Ms. Morris has requested (as detailed in her EEOC charge), have not yet been fulfilled (despite their reasonableness), which is making it difficult for Ms. Morris to work during her scheduled shifts (a period of approximately 8 hours). Recently, Ms. Morris has had to leave early from work as a result of her health conditions becoming exacerbated due to her employers' failure to reasonably accommodate said medical conditions.
>
> Ms. Morris is concerned about having to miss work, as she has been terminated twice already for alleged "attendance" issues, which were related to her disabilities (and in violation of the ADA). If Ms. Morris is not accommodated shortly or is further retaliated against, she will be forced to take further legal action.
>
> Please feel free to contact me if you would like to further discuss.

40. At or around this same time period, Plaintiff was called into the office by Kelly Moss (Supervisor at Defendant Maximus) and reprimanded for false and pretextual reasons, stating that Plaintiff (among other things) was being "disruptive" and "stealing work." Ms. Moss then changed Plaintiff's seat to a location directly in front of her so she could closely monitor Plaintiff.

41. Plaintiff never received a response to the aforesaid July 13, 2017 letter. Instead, on or about July 17, 2017, Plaintiff was informed that she was again being terminated (for the third time) because Defendant Maximus had allegedly eliminated "2nd Shift" – the shift that Plaintiff was assigned to work.

42. Defendants' reason for terminating Plaintiff for the third time in less than two months is completely pretextual as there were other employees (who were also temp employees like Plaintiff from Defendant Agency) who were selected to be retained for other shifts.

43. Furthermore some of the employees that were selected by Defendants to be retained for other shifts had less seniority than her.

44. Plaintiff was was never offered a different shift at Defendant Maximus and Defendant Agency never provided Plaintiff with another assignment following her termination on July 17, 2017.

45. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, issued pretexutal discipline, and terminated three different times in less than two months because of her actual/perceived/record of disabilities, in retaliation for requesting accommodations, and/or in retaliation for complaining about disability discrimination/retaliation.

## First Cause of Action
### Violations of the Americans with Disabilities Act, as Amended ("ADAAA")
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate; [4] Hostile Work Environment)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff suffered from qualifying health conditions under the ADA (as amended) which affected her ability (at times) to perform some daily life activities, as described *supra*.

48. Plaintiff requested reasonable accommodations from Defendant, including but not limited to, medical leave, the ability to take brief breaks to sit in a dark room for a few minutes, a screen protector for her computer, and a chair with neck support.

49. Plaintiff was terminated on June 2, 2017, while still on a medical leave of absence for her aforesaid disability, for reasons directly related to her disability and need for accommodations.

50. It is believed and therefore averred that Plaintiff's June 2, 2017 termination was a result of (1) her known and/or perceived health problems; (2) her record of impairment; and/or (3) her requests for reasonable accommodations (specifically her request for medical leave).

51. Plaintiff was issued pretextual discipline on or about June 27, 2017 because of her (1) her known and/or perceived health problems; (2) her record of impairment; and/or (3) her requests for reasonable accommodations.

52. Plaintiff was terminated on June 29, 2017 and again on July 17, 2017 because of (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requests for reasonable accommodations; and/or (4) her complaints of disability discrimination.

53. Plaintiff also believes and therefore avers that she was subjected to a hostile work environment through pretextual discipline, demeaning and discriminatory treatment, refusal to

provide accommodations, and multiple terminations because of 1) her known and/or perceived health problems; (2) her record of impairment; (3) her requests for reasonable accommodations; and/or (4) her complaints of disability discrimination.

54. Defendants also failed to accommodate Plaintiff's medical conditions by terminating her on June 2, 2017 while she was still on a medical leave of absence and by refusing to provide her with (1) the ability to take brief breaks to sit in a dark room for a few minutes; (2) a screen protector for her computer; and (3) a chair with neck support.

55. These actions as aforesaid constitute violations of the ADAAA.

### Second Cause of Action
### Violations of the Pennsylvania Human Relations Act ("PHRA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate; [4] Hostile Work Environment)

56. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57. Plaintiff reasserts each and every allegation from this Complaint's First Cause of Action, as such actions in this case constitute identical violations of the PHRA.

58. Therefore, Plaintiff believes and avers that she was subjected to a hostile work environment through pretextual discipline, demeaning and discriminatory treatment, refusal to provide accommodations, and multiple terminations because of 1) her known and/or perceived health problems; (2) her record of impairment; (3) her requests for reasonable accommodations; and/or (4) her complaints of disability discrimination.

59. Defendants also failed to accommodate Plaintiff's medical conditions by terminating her on June 2, 2017 while she was still on a medical leave of absence and by refusing to provide her with (1) the ability to take brief breaks to sit in a dark room for a few minutes; (2) a screen protector for her computer; and (3) a chair with neck support.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.   Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.   Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C.   Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.   Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.   Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.   Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                                          Respectfully submitted,

                                          **KARPF, KARPF & CERUTTI, P.C.**

By: */s/ Timothy S. Seiler*
     Timothy S. Seiler, Esq.
     3331 Street Road
     Two Greenwood Square
     Building 2, Ste. 128
     Bensalem, PA 19020
     (215) 639-0801

Dated: November 20, 2018